F I L E D
United States Court of Appeals
Tenth Circuit

March 7, 2006

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRIAN SELF,

        Plaintiff-Appellant,

    v.

PETER CRUM, M.D., Denver County
Jail Medical Services,

        Defendant-Appellee.

No. 04-1037

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 02-F-417 (PAC))**

Louis Wilcox (Timothy M. Hurley, Esq., John Baer, Helen Hoopes, Jeff Gillio, and Ted Ongert with him on the court-ordered briefs) Sturm College of Law at the University of Denver, Federal Appellate Clinic, Denver, Colorado (with Brian Self on pro-se briefs), for Plaintiff-Appellant.

Elizabeth C. Moran, Pryor Johnson Montoya Carney & Karr, P.C., Greenwood Village, Colorado, for Defendants-Appellees.

Before **MURPHY** , **McWILLIAMS** , and **TYMKOVICH** , Circuit Judges.

**TYMKOVICH** , Circuit Judge.

Brian Self suffered permanent heart damage from a medical condition that worsened while a prisoner in the Denver County jail. Self sued the prison's treating physician, Dr. Peter Crum, for deliberate indifference to his medical needs in violation of the Eighth Amendment. Self appeals the district court's grant of summary judgment in favor of Crum. We agree with the district court that Self did not create a genuine issue of material fact as to whether Crum either knew about and failed to treat Self's condition or otherwise consciously disregarded Self's medical needs.

Having jurisdiction under 28 U.S.C. § 1291, we therefore affirm.

## I. Background

Police in Denver, Colorado arrested Brian Self on Monday, February 28, 2000, and took him to the Denver City jail. That night, Self complained of fever, aches, chills, cough, shortness of breath, as well as redness and swelling in his left calf. A prison nurse saw Self the next day. Self attributed his symptoms to a possible bite by a brown recluse spider, which he believed happened prior to his arrest.

On Wednesday, March 1, Self was transferred to the Denver County jail, where a second nurse examined him at intake. The nurse noted Self's various symptoms, including the claim of a spider bite, and referred him to Dr. Peter Crum, a contract physician assigned to the jail. That same day, Crum performed a

2

focused examination, *i.e.* a symptoms-based examination limited to the likely source of the problem. Suspecting a respiratory tract infection, he examined only Self's ears, nose, throat, and lymph nodes, but did not listen to Self's heart. Based on this examination as well as Self's vital signs, Crum prescribed aspirin and cough medication to alleviate his fever and cough. He also ordered Self to remain in the infirmary for continued observation. Because Self's symptoms were not particularly specific, Crum could not diagnose a cause of the symptoms other than to exclude the spider bite. That evening, Self's fever responded to the aspirin, falling from 102.5 to 99.8.

Crum again examined Self on Friday, March 3. Self's symptoms persisted, so Crum continued with the same course of treatment, ordering Self to remain in the infirmary over the weekend. In addition, he (1) ordered lab work on Self's blood and urine, (2) instructed the nursing staff to check Self's vital signs every eight hours, and (3) scheduled time to re-evaluate Self on Monday at which time the lab work would be available.

Over the weekend, Self's condition did not improve. An on-call physician, who examined Self over the weekend, suggested he see Crum on Monday. On Monday, March 6, Crum reviewed Self's file, noting for the first time Self's history of cocaine use, and again examined Self. Although the lab results were not yet available, Crum listened to Self's lungs. After hearing what he thought

3

was evidence of pneumonia, Crum prescribed an antibiotic and sent Self to the hospital for x-rays and, if necessary, emergency treatment. Self objected to an emergency room referral, but was admonished that if he did not improve by the morning he would again be asked to visit the emergency room.

The hospital staff diagnosed Self with a pronounced heart murmur and a possible bacterial infection of the heart, later identified as endocarditis.[1] The hospital initially treated Self with antibiotics, but eventually concluded that surgery was necessary. On March 10, 2000, Self was transferred to another hospital for repair of his aortic valve. During surgery, doctors determined they needed to implant a pacemaker. According to Self, the surgeons stated that had the endocarditis been caught earlier, the damage to his heart might have been less severe and, consequently, surgery might have been avoided.

Self filed a complaint against Crum for acting with deliberate indifference towards his medical needs in violation of the Eighth Amendment and 42 U.S.C. § 1983. After Self filed his complaint and discovery had been conducted, Crum filed for summary judgment arguing no genuine issue of disputed fact existed as to whether Crum acted with deliberate indifference in the face of Self's

---

[1] The record is unclear as to when Self was transferred from the x-ray facilities at the hospital to the emergency room. However, at some point after his x-rays were completed, Self was evaluated by hospital staff and referred to the emergency room.

4

symptoms.

The magistrate judge recommended denying the motion because she found a disputed issue of material fact as to Crum's state of mind when he failed to properly diagnose Self's medical condition. The district court, however, rejected the magistrate judge's recommendation. The court found no disputed issue of fact, noting the record did not allow an inference that (1) Crum knew or reasonably believed Self suffered from endocarditis, or (2) Crum deliberately disregarded information which would have led to the discovery of Self's actual condition.

## II. Standard of Review

Summary judgment is appropriate in cases where the record discloses "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). In a deliberate indifference case under the Eighth Amendment, we look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The plaintiff must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Id.* "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v.*

5

*Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992); *accord Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (noting that "unsupported conclusory allegations . . . do not create a genuine issue of fact") (internal citation and quotation marks omitted).

### III.  Discussion

### A.  Legal Framework

The Supreme Court first recognized claims for deliberate indifference to a prisoner's medical needs in *Estelle v. Gamble*, 429 U.S. 97 (1976).  The Court held that prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Id.* at 104 (internal citation and quotation marks omitted).  To prevail on a claim under 42 U.S.C. § 1983, however, "inadvertent failure to provide adequate medical care" is not enough, nor does "a complaint that a physician has been negligent in diagnosing or treating a medical condition . . . state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 105, 106.  Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

6

The Supreme Court clarified the standards applicable to deliberate indifference claims in *Farmer v. Brennan*, 511 U.S. 825 (1994). In *Farmer*, the Court set forth a two-pronged inquiry, comprised of an objective and subjective component. Under the objective inquiry, the alleged deprivation must be "sufficiently serious" to constitute a deprivation of constitutional dimension. *Id.* at 834. In addition, under the subjective inquiry, the prison official must have a "sufficiently culpable state of mind." *Id.*

In describing the subjective component, the Court made clear a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component is akin to "recklessness in the criminal law," where, to act recklessly, a "person must 'consciously disregard' a substantial risk of serious harm." *Id.* at 837, 839 (quoting Model Penal Code § 2.02(2)(e)). And "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842. The fact that a serious medical need was "obvious" could be evidence of deliberate indifference, although a "prison official may show that the obvious escaped him" and avoid liability. *Id.* at 843 n.8; *see id.* at 842–43.

7

Our circuit has recently examined deliberate indifference claims involving medical treatment in several contexts. In *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000), for example, we recognized two types of conduct which may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition. *Id.* at 1211. In *Sealock*, we concluded that the subjective component was not met where a prison nurse misdiagnosed an inmate's chest pains as the flu, and failed to recognize symptoms suggesting an impending heart attack. *Id.* at 1208, 1211, 1212 n.7. Those facts indicated at best, we noted, negligent diagnosis or treatment. *Id.* at 1211. We also concluded the subjective component *might* be met where a physician's assistant failed to summon an ambulance despite candidly admitting that, had he known about the inmate's chest pains, he would have done so. *Id.* at 1211–12. In that instance, we found disputed evidence as to the assistant's actual knowledge concerning the inmate's chest pains; in other words, the facts supported an inference he knew about the chest pains yet intentionally disregarded his practice of summoning an ambulance. *Id.*

A second recent case also involved a claim of inadequate medical care. In *Oxendine v. Kaplan*, 241 F.3d 1272 (10th Cir. 2001), we observed that "a prisoner

8

who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation," *id.* at 1277 n.7 (internal citations and quotation marks omitted), absent evidence the prison official "knew about and disregarded a 'substantial risk of harm' to [the prisoner's] health or safety." *Id.* at 1277. In *Oxendine*, the prison doctor repaired a severed finger but failed to diagnose the onset of gangrene. In finding the evidence sufficient to satisfy the subjective component and defeat a summary judgment motion, we noted the obviousness of the problem: (1) the repaired tissue appeared black and was disintegrating, (2) the inmate repeatedly informed the doctor that his finger was not healing, and (3) the doctor himself recognized and noted these symptoms but ignored them. *Id.* at 1279–80. The court observed that given the obviousness of the inmate's condition, it was clear the case involved more than a "mere disagreement between the parties." *Id.* at 1277 n.7. We therefore allowed further discovery as to the doctor's subjective state of mind in delaying both additional medical care and referral to a specialist.

Finally, in *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), we held that a prison health official who serves "'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Id.* at 751 (quoting *Sealock*, 218 F.3d at 1211). We reiterated that the

9

subjective component presents a high evidentiary hurdle to the plaintiffs: a prison official must know about and disregard a substantial risk of serious harm. *Id.* at 752. In applying these principles, we allowed a claim against a nurse who knew the inmate was suffering from severe chest pains yet "completely refused to assess or diagnose" the potential cardiac emergency in violation of prison medical protocols. *Id.* at 758; *see id.* at 755–59. However, we denied a claim against a different nurse who established "a good faith effort to diagnose and treat [the inmate's] medical condition" despite failing to diagnose a heart attack. *Id.* at 761; *see id.* at 760–61.

These cases show that the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing. *See, e.g.*, *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (noting that types of medication prescribed and referrals to specialists are generally matters of medical judgment). The Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves "the question whether additional diagnostic techniques or forms of treatment is indicated." *Estelle*, 429 U.S. at 107.

A claim is therefore actionable only in cases where the need for additional

10

treatment or referral to a medical specialist is obvious. And obviousness in the circumstances of a missed diagnosis or delayed referral, while not subject to a precise formulation, requires direct or circumstantial evidence that can arise in several different contexts: (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, *e.g.*, a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; *see, e.g.*, *Oxendine*, 241 F.3d at 1279; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.*, a gangrenous hand or a serious laceration; *see id*.; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, *e.g.*, a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell. *See, e.g.*, *Mata*, 427 F.3d at 755–59; *Sealock*, 218 F.3d at 1211–12.

This is not to say that a plaintiff faces insurmountable obstacles in showing subjective indifference. If a prison doctor, for example, responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious

11

disregard.  For that reason, the doctor in *Oxendine* could be liable for failure to treat a gangrenous finger or the physician's assistant in *Sealock* could be liable for failure to summon an ambulance.  But where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law.

In the end, the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).  So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met.  Indeed, our subjective inquiry is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary.  *See Mata*, 427 F.3d at 753 (opining that the symptoms presented at the time the physician has contact with the patient is relevant to the subjective inquiry only; objective seriousness is based on the ultimate harm presented).

## B.  Application

Applying these standards, we consider whether Self presented sufficient evidence of both the objective and subjective components of his deliberate

indifference claim to create a genuine issue of material fact. In particular, Self must surmount two obstacles to avoid summary judgment: (1) a showing of the objective seriousness of the medical risk he faced, *i.e.*, endocarditis; and (2) a showing of Crum's culpable state of mind. The latter may be demonstrated by a showing of either Crum's (a) conscious disregard of a substantial risk of serious harm arising from Self's symptoms, or (b) actual knowledge of Self's heart condition and refusal to order further treatment.

Neither party disputes the objective component has been met here. The only question, then, is whether a reasonable jury could find either Crum's conscious disregard or actual knowledge of Self's serious medical needs. We discuss each allegation in turn and, in each instance, conclude a jury could not find the requisite state of mind.

*1. Conscious Disregard*

While Crum readily admits endocarditis is an objectively serious condition, he denies that he consciously disregarded a substantial risk of harm arising from that condition. He contends, therefore, the district court's grant of summary judgment was correct. Self argues, in rebuttal, that he should survive summary judgment because Crum "failed to take sufficient steps either to diagnose or else to treat that substantial risk of harm." Appellant's Br. at 24. Put another way, Self suggests that a competent doctor looking at Self's symptoms would have

13

known that endocarditis was possible and taken additional steps to confirm such a diagnosis.

The difficulty with Self's argument, however, is that it removes the subjective inquiry from the deliberate indifference test. As *Farmer v. Brennan* and our cases interpreting *Farmer* have made clear, a "purely objective test for deliberate indifference is simply incompatible" with the tenets of the Eighth Amendment. *Farmer*, 511 U.S. at 839; *see Mata*, 427 F.3d at 751 (noting that the test for deliberate indifference involves both an objective *and* subjective component). Accordingly, Self must point to some evidence allowing an inference Crum consciously disregarded the possibility of Self's heart condition. The record does not support such an inference.

In this case, Self's evidence shows that he presented with a variety of symptoms when he was first examined by Crum on March 1. These nonspecific symptoms included cough, chills, fever, rapid pulse, low blood pressure, as well as swelling and redness in a calf. Recognizing that Self needed medical treatment, Crum provided medication consistent with a respiratory infection by prescribing aspirin and cough syrup to reduce Self's fever and coughing. In fact, Self's fever responded to the medication, falling from 102.5 to 99.8.

When Crum examined Self again two days later, on March 3, many of the symptoms previously alleviated by the medications had returned. Crum again

14

prescribed a course of treatment consistent with respiratory infection. This time, however, Crum also ordered lab work on Self's blood and urine. In addition, he ordered Self to remain in the infirmary and required prison staff to monitor Self's vital signs at each staff change. On March 6, Crum examined Self for a third time.[2] Concerned that he was no longer responding to the medications or otherwise improving, Crum listened to Self's lungs and detected signs of pneumonia. He immediately prescribed an antibiotic and sent Self to the hospital for x-rays to follow up on the diagnosis of pneumonia.

These facts, in the light most favorable to Self, do not show conscious disregard of Self's medical needs. Self cannot argue he was denied medical treatment. He was not. Rather, his claim is that the course of treatment was inadequate. Self's symptoms, however, were consistent with a variety of conditions, including respiratory infection. Indeed, Crum presented testimony from another doctor that Self's symptoms were consistent with a respiratory infection, and the treatment Crum provided for this condition was appropriate. Self's only rebuttal evidence was the notes of a doctor from the admitting hospital who discovered the heart condition. But nothing in the assessment conducted by

---

[2] Crum did not examine Self over the weekend of March 4–5 because another physician was on-call. Self was seen by the on-call physician who ordered him to see Crum on Monday. No Eighth Amendment claim has been made against the on-call physician.

15

the doctor at the hospital, hours if not days following Crum's examinations, bears on whether Crum consciously disregarded a substantial risk in treating Self. *See Mata*, 427 F.3d at 756 (observing that conscious disregard is determined at the time a medical professional denies care irrespective of whether the inmate ultimately avoided a medical emergency due to subsequent treatment by another medical professional).

Thus, the mere possibility that Self's symptoms could also point to other conditions, including endocarditis, is not sufficient to create an inference of deliberate indifference. While Crum may not have appreciated a need for further testing until March 6, the record shows that when presented with evidence the prescribed treatment regimen for respiratory infection was not succeeding or that Self may have contracted pneumonia, Crum sent Self to the hospital.

At worst, the evidence shows Crum misdiagnosed Self's condition. But a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim. Where a doctor faces symptoms that could suggest either indigestion or stomach cancer, and the doctor mistakenly treats indigestion, the doctor's culpable state of mind is not established even if the doctor's medical judgment may have been objectively unreasonable. *See Sealock*, 218 F.3d at 1211 (finding the subjective component not met when defendant merely misdiagnosed

16

inmate); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1989) (finding no 42 U.S.C. § 1983 liability where physician diagnosed prisoner with gastritis and prisoner later died of a punctured esophagus); *cf. Mata*, 427 F.3d at 758 (noting that defendant did not simply misdiagnose inmate but rather completely refused to diagnose inmate). Here, nothing suggests that Self's symptoms obviously required unusual medical skill or ability thus necessitating referral, or that Crum otherwise failed to provide a course of treatment consistent with the symptoms he recognized.

Self nonetheless argues two disputed issues of fact remain, which, if proven, demonstrate Crum consciously disregarded a substantial risk of harm: (1) Crum failed to listen to Self's heart, and (2) Crum knew Self was an intravenous drug user, a risk factor for endocarditis. While those assertions may be true, they do not create an inference of deliberate indifference. Self has presented nothing to suggest Crum's failure to conduct a heart examination when he suspected respiratory problems so grossly violates medical norms as to suggest deliberate indifference. His decision to conduct a focused examination and not to listen to Self's heart is a classic medical judgment we ordinarily will not second-guess. *See Estelle*, 429 U.S. at 107. Nor does he present any evidence suggesting Crum would have altered his treatment or diagnosis if he had known Self was an intravenous drug user. Self's intravenous drug use, while a risk factor for

17

endocarditis, would no more positively identify Self's ailment than the other nonspecific symptoms would. A treating physician's failure to connect-the-dots is by itself insufficient to establish a culpable state of mind.

Crum's failure to connect-the-dots distinguishes his conduct from the conduct described in *Sealock*. Both here and in *Sealock*, the medical professional acknowledged he would refer a patient under certain circumstances to the hospital. Crum thus conceded he would send a patient to the emergency room if he thought endocarditis was possible; the physician's assistant in *Sealock* admitted he would automatically order an ambulance if a patient presented with chest pain. 218 F.3d at 1211. We found a disputed issue of fact in *Sealock* because the physician's assistant arguably had knowledge of the very symptom, *i.e.* chest pain, for which he stated he would refer a patient. And the reason why the physician's assistant would refer a patient with chest pain is exactly because such symptom obviously presents the possibility of a heart attack. *Id.* at 1211–12. To the contrary, Crum knew only that Self suffered from a variety of nonspecific symptoms. These vague symptoms, neither individually nor collectively, obviously pointed to endocarditis. Only when the symptoms obviously point to a substantial risk of harm can we draw an inference of the medical professional's conscious disregard of an inmate's medical emergency. *See Oxendine*, 241 F.3d at 1279–80.

18

In sum, a reasonable jury could not infer conscious disregard either from Crum's missed diagnosis or Crum's failure to conduct further testing. While Crum's medical judgment may constitute negligence or medical malpractice, it would amount to mere speculation to conclude Crum had a culpable state of mind. Summary judgment requires more than mere speculation. It requires some *evidence*, either direct or circumstantial, that Crum knew about and consciously disregarded the risk. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). And as the Supreme Court has observed, an "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

*2. Actual Knowledge*

Self also argues that a jury could conclude Crum "actually diagnosed a potential heart problem," but ignored it. Appellant's Br. at 24. This argument is based on allegations that (1) Crum altered the date of his treatment notes to reflect March 1 instead of March 6; (2) his notes failed to provide any contemporaneous diagnosis; (3) his notes repeated only of a portion of the information from the nurse's notes; (4) Crum knew Self was an intravenous drug user prior to March 6; and (5) Crum listened to Self's lungs, so he must have listened to his heart. We disagree.

19

These allegations suffer from the same infirmity discussed above—they rest solely on speculation and conjecture; as such, they cannot support an inference of actual knowledge. Crum explained in his deposition that (1) a typographical error during transcription caused the erroneous date to appear on his notes; (2) he could not make a diagnosis prior to March 6 because he had not yet isolated the cause of the symptoms;[3] (3) he was unaware of Self's drug use; and (4) he conducted a focused exam for a respiratory ailment and therefore did not listen to Self's heart. In response, Self offers no testimony of the nurse as to what she told Crum or saw him do, no affidavit that Crum actually listened to Self's heart, nor any expert report as to the significance of Self's drug use. Inferences supported by conjecture or speculation will not defeat a motion for summary judgment. *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992) (noting that "[u]nsubstantiated allegations carry no probative weight" in summary judgment proceedings).

In short, the record is undisputed that Crum did not know that Self suffered from endocarditis. And even if Crum had the facts before him to know Self suffered from a heart condition (and no evidence supports such an inference), Self has not presented any evidence to show that Crum actually "dr[ew] the inference"

---

[3] Indeed, the course of Crum's treatment is evidence of his thoughts regarding diagnosis, and the evidence shows Crum suspected a respiratory tract infection.

that the cause of Self's symptoms was a condition other than he suspected. *Farmer*, 511 U.S. at 837. It is simply insufficient that the doctor "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844. Accordingly, we agree with the district court that Self has not produced sufficient evidence to defeat summary judgment.

## IV. Conclusion

Although the record presented by Self may create a question of fact regarding Crum's negligence in treating Self, a question not presented here, Self fails to overcome the evidentiary hurdle for a deliberate indifference claim. Accordingly, the district court did not err in granting summary judgment. We therefore affirm.