**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 5, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

OSLER LORAYMOND CHILDRESS;
GEORGIA CHILDRESS,

        Plaintiffs-Appellants,

v.

ROBERT HARMS,

        Defendant-Appellee,

and

MIDVALE CITY; SALT LAKE
COUNTY; KRESDON BENNETT;
KEN YURGELSON; NORM
BETTRIDGE,

        Defendants.

No. 11-4038
(D.C. No. 2:09-CV-00500-DAK)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In this 42 U.S.C. § 1983 medical-indifference case, Plaintiffs Osler and Georgia Childress appeal from a district court order that granted Defendant Robert Harms's motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## BACKGROUND[1]

On May 16, 2006, Mr. Childress was staying at a motel in Midvale, Utah. When a motel clerk saw him staggering around his room and running into things, she called police and reported that an intoxicated guest was causing a commotion. Police and paramedics arrived. Inside the motel room they observed a partially consumed container of beer and Mr. Childress, who was unable to stand and was slurring his speech. The paramedics concluded that Mr. Childress was drunk. The police smelled alcohol on his breath and determined that he was so intoxicated that he was a danger to himself. They placed him under arrest and transported him to the Salt Lake County Jail.

Upon Mr. Childress's arrival at the jail, nurses Robert Harms and Joel Smith examined him while he was handcuffed to a gurney. Mr. Childress denied drinking and answered questions about his military duties without difficulty, although his speech was slightly slurred. Nurse Harms smelled alcohol on

---

[1]    In his brief, Defendant cites a number of depositions that are not in the appendix before this court. Although he has attached the depositions to his brief, he has not sought to enlarge the record. *See* 10th Cir. R. 30.2. Consequently, we do not consider those depositions.

Mr. Childress's breath, and had been told by a police officer that he was under the influence. A brief neurological examination revealed that Mr. Childress's pupils and grip strength were bilaterally equal. Nurse Harms recorded his vital signs and Glasgow Coma Score (GCS),[2] and noted Mr. Childress's complaints of dizziness and ringing in his ears. Both nurses agreed that Mr. Childress was intoxicated.

He was placed in a holding cell, where his vital signs and GCS were measured at least four times during the ensuing six hours. When Nurse Harms checked on Mr. Childress at 3:00 a.m., he noted his blood pressure had gone up, and he gave Mr. Childress some Gatorade to rehydrate himself. At 4:55 a.m., Nurse Harms re-checked Mr. Childress, and noted he was sitting up, but was confused and still slurring his speech. Nurse Harms "attributed [it] to alcohol," which "was what he came in for." Aplt. App. at 45-46.

At roughly 6:00 a.m., Mr. Childress fell down in his cell and was transported to the hospital. There, medical providers determined that he had suffered a cerebellar stroke.

Mr. Childress filed suit in Utah state court against Midvale City, Salt Lake County, and the Midvale police officers who responded to his motel room. He alleged that the defendants violated the Utah and federal constitutions by being

---

[2]    The GCS measurement of "impaired consciousness" utilizes "motor responsiveness, verbal performance, and eye opening." *Stedman's Medical Dictionary* 1596 (27th ed. 2000).

deliberately indifferent to his serious medical needs. The court granted summary judgment to all the defendants except officer Kresdon Bennett, who had transported Mr. Childress to the jail, and it permitted Mr. Childress to amend his complaint to add Nurse Harms as a defendant.

During his deposition, Nurse Harms testified that the symptoms of a stroke include hemispheric drooping of the face, slurred speech, dizziness, limping, neurological deficits, and elevated blood pressure. He further stated that ringing of the ears indicates a neurological problem. Regarding his initial examination of Mr. Childress, Nurse Harms testified that he performed no tests to determine whether Mr. Childress had suffered or was suffering a stroke. Aplt. App. at 33. It was not until after Mr. Childress fell over and was sent to the hospital that Nurse Harms began to think that something more than intoxication was involved, possibly a head injury from falling. *Id.* at 55.

The case was removed to federal court, where Nurse Harms obtained summary judgment and officer Bennett obtained a defense jury verdict. Mr. Childress now appeals from the summary judgment in favor of Nurse Harms.

## DISCUSSION

### Summary Judgment Standards

"We review summary judgment decisions de novo, applying the same legal standard as the district court." *Willis v. Bender*, 596 F.3d 1244, 1253 (10th Cir. 2010) (quotation omitted). Summary judgment should be granted if there is no

-4-

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). This standard requires that "[w]e view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party." *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1310 (10th Cir. 2006).

**Deliberate Indifference**

"Under the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (ellipses and quotation omitted). "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

Deliberate indifference "involves both an objective and a subjective component." *Id.* (quotation omitted). For the objective component, a prisoner must provide "evidence that the deprivation at issue was in fact sufficiently serious." *Id.* (quotation omitted). The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also

-5-

draw the inference." *Id.* (brackets and quotation omitted). This "standard lies somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 752 (quotation omitted). Nurse Harms concedes that Mr. Childress has established the objective component of the deliberate-indifference test. Thus, this case turns on the subjective component.

The district court determined that Nurse Harms merely misdiagnosed Mr. Childress, and did not

> [draw] the inference that would indicate a substantial risk of harm. Although Nurse Harms recognized the possible symptoms of a stroke in Mr. Childress, those symptoms were also common to alcohol intoxication. Based on the evaluation of Mr. Childress's pupil size and grip strength, Nurse Harms and Nurse Smith ruled out the likelihood of a stroke.

Aplt. App. at 9.

Mr. Childress argues that the district court "confuse[d] knowledge of harm with knowledge of the <u>risk</u> of harm." Aplt. Br. at 6. He contends that Nurse Harms knew that he "was presenting signs of a stroke" "but did nothing to confirm or rule out [a] stroke." *Id.* This contention fails for two reasons.

First, the record does not support it. Nurse Harms testified that he knew the symptoms of stroke; he did not testify that he recognized Mr. Childress was exhibiting stroke symptoms. Indeed, Nurse Harms repeatedly testified that he attributed Mr. Childress's symptoms to intoxication, and he maintained that view until Mr. Childress fell down and was taken to the hospital.

Second, whether Nurse Harms should have done more to diagnose the source of Mr. Childress's symptoms is a question of negligence. But "negligent diagnosis or treatment of a medical condition does not constitute a medical wrong under the Eighth Amendment." *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008) (brackets and quotation omitted); *see also Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) ("The Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a [medical provider] simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated." (quotation omitted)). Rather, there must be "an extraordinary degree of neglect." *Self*, 439 F.3d at 1232. In other words, "the need for additional treatment or referral to a medical specialist [must be] obvious." *Id.* But Mr. Childress has provided absolutely no evidence that his symptoms obviously indicated a stroke, rather than intoxication. The only evidence in the record is that Nurse Harms knew that Mr. Childress was brought in due to intoxication, he could smell alcohol on his breath, and he concluded—along with Nurse Smith—that Mr. Childress was in fact intoxicated.

Moreover, Nurse Harms interviewed Mr. Childress, checked his vital signs, measured his GCS, and monitored him in the holding cell. When Mr. Childress fell down, Nurse Harms was involved in the decision to promptly send him to the hospital. Although doctors at the hospital ultimately determined that Mr. Childress had suffered a stroke, "our subjective inquiry is limited to

consideration of the [healthcare provider's] knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary." *Id.* at 1233. Nothing indicates that the level of care provided by Nurse Harms was inconsistent with the symptoms Mr. Childress presented. Nor is there any evidence of actual knowledge or recklessness by Nurse Harms.

Mr. Childress's reliance on *Pimentel v. Deboo*, 411 F. Supp. 2d 118 (D. Conn. 2006) is misplaced. Unlike Mr. Childress's case, there was no issue of intoxication masking the prisoner's stroke symptoms. Moreover, in *Pimentel* the medical providers ignored the prisoner's repeated requests for medical care over a five-day period. Here, Mr. Childress was not denied care, but rather, was regularly monitored and examined before being taken to the hospital—all of which occurred within a roughly six-hour period.

Because Mr. Childress has failed to establish the subjective component of deliberate indifference, summary judgment was appropriately entered on his § 1983 claim.

## State Law Claim

Article I, section 9 of the Utah Constitution states that "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." "[T]his provision applies where a prisoner shows that a prison employee was deliberately indifferent to the prisoner's medical needs or subjected him to clearly excessive

or deficient or unjustified treatment." *State v. M.L.C.*, 933 P.2d 380, 385 (Utah 1997) (brackets and quotation).

To meet this standard, the plaintiff must show that (1) "the risk of harm was serious"; (2) the "risk was obvious and known to the defendant[ ]"; and (3) there was no reasonable justification for the defendant's actions. *Dexter v. Bosko*, 184 P.3d 592, 598 (Utah 2008). Mr. Childress asserts that a jury should be permitted to determine whether Nurse Harms acted reasonably in "assum[ing] that Mr. Childress was merely drunk." Aplt. Br. at 7. But given the evidence in this case, and for the same reasons discussed above regarding Mr. Childress's § 1983 claim, no reasonable jury could return a verdict in his favor on his state-law claim. Thus, summary judgment was appropriate.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge