FILED
United States Court of Appeals
Tenth Circuit

September 7, 2018

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

GERALD LEE PATTERSON,

    Plaintiff - Appellant.

v.

GEORGE SANTINI; CAMACHO, P.A.;
FIVE JOHN/JANE DOES,

    Defendants - Appellees.

No. 18-1040
(D.C. No. 1:11-CV-01899-RM-KLM)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

Plaintiff Gerald Lee Patterson, a former prisoner at the Federal Prison Camp

(FPC) in Florence, Colorado, appeals from the district court's order granting summary

judgment on the ground of qualified immunity in favor of two FPC health-care providers

on his claims that they violated his Eighth Amendment rights by inadequately treating

herniated discs in his neck. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

In April 2012, Plaintiff, 74 years old at the time, filed his amended complaint (the operative pleading in this case), complaining of mistreatment at FPC while he was incarcerated there beginning in June 2010. He had previously been diagnosed with degenerative disc disease in his cervical spine. Plaintiff does not complain of his general medical care, but alleges that two health-care providers, Defendants Ronald Camacho, an FPC physician's assistant, and Dr. George Santini, the clinical director and medical officer at FPC, provided inadequate treatment for his chronic neck pain and exhibited deliberate indifference to his pain.

We review de novo the grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *See TPLC, Inc. v. United Nat. Ins. Co.*, 44 F.3d 1484, 1489 (10th Cir. 1995). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, a defendant asserts qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to show that the defendant violated a clearly established constitutional right. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). To satisfy that burden, the plaintiff must "go beyond the pleadings and designate specific facts" that establish a material factual dispute. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006); *see* Fed. R. Civ. P. 56(c)(1)(A).

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test for such a claim includes both subjective and objective components. *See Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006). The objective

2

component is met when a harm is "sufficiently serious" to implicate the Eighth Amendment. *Id.* To meet the subjective component, Defendants must have known that Plaintiff "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Kikumura*, 461 F.3d at 1293 (internal quotation marks omitted). The subjective component presents a "high evidentiary hurdle." *Self*, 439 F.3d at 1232.

Plaintiff has not surmounted this hurdle. We need not pass on the question of whether Plaintiff's neck pain was serious enough to meet the objective component of his claim, because he has failed to demonstrate the subjective component. As the district court observed, Defendants repeatedly adjusted Plaintiff's medications in response to his complaints of pain, requested imaging of his neck and spine, and arranged for him to receive consultations with specialists. We summarize some of the pertinent evidence, beginning with the conduct of Defendant Camacho.

Camacho first saw Plaintiff on January 28, 2011, for complaints of neck pain and injuries he sustained when he fell down stairs after being shocked by the neck pain. Camacho prescribed pain medication, ordered x rays on Plaintiff's neck, spine, and foot, and added Plaintiff to the Orthopedic Chronic Care Clinic list because of his degenerative joint and disc diseases. The x rays revealed degenerative disc disease in Plaintiff's neck. Camacho saw Plaintiff regarding his neck pain again on February 14, March 10, March 24, and April 14. He prescribed Gabapentin for nerve pain, gradually increasing the dose to relieve pain. On September 6, Camacho submitted a consultation request for an MRI of Plaintiff's cervical spine. The request was denied. On January 27, 2012, the prison

sent Plaintiff for an outside orthopedic consultation; the doctor recommended Naproxen, steroidal injection, moist heat, and passive range-of-motion exercises. Although Plaintiff saw Camacho for other ailments before he filed his amended complaint in April 2012, there is no evidence of other visits regarding neck pain.

As for Santini, Plaintiff was seen three times by mid-level providers working under Santini in June, July, and October 2010; and Santini ordered treatments for Plaintiff to address his complaints of foot pain, shoulder pain, and breathing difficulties. The providers tried various medications to alleviate Plaintiff's discomfort. Plaintiff did not complain of neck pain during any of these visits. Santini first heard Plaintiff's complaint about neck pain during a chronic-care visit on February 9, 2011, and prescribed 300 mg of Gabapentin for nerve pain. He noted that Plaintiff attended follow-up visits with Camacho on February 14, March 10, and March 24, 2011, during which Camacho increased the Gabapentin dose to 1200 mg, then 1800 mg, then an unquantified higher dosage. On June 3, 2011, Plaintiff saw another provider, FPC Dr. C.A. Wilson (not a party to this litigation), who took him off Gabapentin and switched him to Meloxicam. Plaintiff's dose of Meloxicam was doubled in July 2011 but then discontinued in August after bloodwork revealed abnormalities. On September 21, 2011, Dr. Wilson prescribed Levetiracetam for chronic pain; but after Plaintiff did not take the medication for a week, it was discontinued in October. In February 2012, Dr. Wilson wrote a prescription for a steroid injection to help with Plaintiff's neck pain; but in April, Dr. Wilson noted that Plaintiff would need an MRI before receiving an injection. Plaintiff underwent the MRI in October 2012, several months after he filed the amended

4

complaint in this case, and he received a steroid injection in May 2013.  Plaintiff complains that 15 months elapsed between the suggestion that he receive a steroid injection and when he actually received it, but only three months of that delay—January 27, 2012, until the filing of the amended complaint in April—is relevant to his claim, and he does not present any evidence connecting that delay to Defendants.

Plaintiff may have preferred to be treated differently.  But there is no support in this record for his claim of deliberate indifference by either Defendant.

Finally, Plaintiff alleges that the district judge was biased against him and he was prejudiced thereby. We perceive no evidence of bias, but in any case Plaintiff forfeited this argument by not moving for recusal in the district court.  *See Knight v. Mooring Capital Fund*, LLC, 749 F.3d 1180, 1191 (10th Cir. 2014) ("The party seeking recusal must act in a timely fashion to request recusal.").

**CONCLUSION**

We **AFFIRM** the judgment below and **GRANT** Plaintiff's motion to proceed in forma pauperis.


Entered for the Court


Harris L Hartz
Circuit Judge