FILED
United States Court of Appeals
Tenth Circuit

March 31, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CHESTER LEE RENEAU,

     Plaintiff - Appellant,

v.

MARY CARDINAS, in her individual
capacity; JUDY BRIZENDINE, in her
individual capacity; DOCTOR LOUIS
CABILING, in his individual capacity;
RICK RAEMISCH, Executive Director, in
his individual and official capacities,

     Defendants - Appellees.

No. 20-1220
(D.C. No. 1:17-CV-02595-PAB-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT***

_____

Before **PHILLIPS**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

Chester Lee Reneau, proceeding pro se, appeals from the district court's grant

of summary judgment to prison nurse Mary Cardinas and prison doctor

Louis Cabiling in his 42 U.S.C. § 1983 civil rights suit.[1]  Exercising jurisdiction

---

* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Mr. Reneau does not challenge the judgment with regard to other defendants.

under 28 U.S.C. § 1291, we affirm the grant of summary judgment to Dr. Cabiling, but we reverse and remand for further proceedings on Mr. Reneau's claim against Nurse Cardinas.

## BACKGROUND[2]

Mr. Reneau is an inmate in the Colorado Department of Corrections. On Wednesday, March 8, 2017, he slipped while climbing down the ladder from his bunk bed at Crowley County Correctional Facility. He fell against the metal seat and table affixed to the wall, injuring his left shoulder, his left leg, and his right wrist. His wrist was merely bruised, but as it turned out, Mr. Reneau had torn his rotator cuff and fractured the fibula bone in his leg.

At first, Mr. Reneau did not think he was too injured, and he went to breakfast. But then he started feeling pain and noticed bruising. Mr. Reneau declared a medical emergency and reported to the medical clinic, where Nurse Cardinas was on duty. When the nurse called him into the examination room, he told her about his fall. He "showed [her] a large bruise with swelling on his left leg, a large bruise with swelling on his left shoulder, and a bruise on his right wrist." R. at 42. He "explained to [her] that his left leg and his left shoulder were in severe pain and that he could not lift his

---

[2] We recite the facts in the light most favorable to Mr. Reneau. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The defendants relied only on Mr. Reneau's deposition testimony. As the magistrate judge noted in his report and recommendation, however, the amended complaint was signed under penalty of perjury, and thus it also serves as evidence, *see Howard v. Waide*, 534 F.3d 1227, 1230 n.2 (10th Cir. 2008).

left arm or move his left foot." *Id.* And he said that it felt like something in his shoulder was injured and something in his leg was broken.

Nurse Cardinas asked Mr. Reneau what he would like her to examine. He said, "I would like to have my wrist examined, my leg examined, and my shoulder examined." *Id.* at 156. She responded, "Well, it's not going to work that way," *id.*, which Mr. Reneau understood to mean that she would examine only one injury during the visit, and she was making him choose which one. Becoming upset, Mr. Reneau told her that if she did not examine all his injuries, he would file a § 1983 suit against her. Instead of examining any of Mr. Reneau's injuries, Nurse Cardinas called a security guard and sent Mr. Reneau back to his unit for being uncooperative.

Mr. Reneau waited a few days to make sure Nurse Cardinas was not on duty, then returned to the medical unit on two consecutive days, on or about March 12 and 13. During one visit, the nurse(s) then on duty (not party to this litigation) examined his leg, and during the other, his shoulder. X-rays were requested but not taken until Wednesday, March 15, because the prison takes X-rays only once a week. When read on Friday, March 17, the X-rays showed nothing with regard to Mr. Reneau's shoulder but confirmed his leg fracture. That same day, his leg was put in a temporary cast for the weekend.

On Monday, March 20, Mr. Reneau saw Dr. Cabiling for the first time. Dr. Cabiling replaced the temporary cast with a permanent cast, but he rejected Mr. Reneau's request for an MRI of his shoulder, instead sending him for a second

3

set of X-rays. In April or May of 2017, Dr. Cabiling also gave Mr. Reneau a cortisone shot for his shoulder, which helped him move his arm "a little bit better for . . . three to four months." *Id.* at 169. Mr. Reneau was transferred to a different prison, out of Dr. Cabiling's care, in February 2018. In September 2019, an MRI of his shoulder revealed one definite and one probable tear. A doctor recommended surgery in February 2020.

Mr. Reneau filed suit under § 1983, alleging Nurse Cardinas and Dr. Cabiling violated the Eighth Amendment by exhibiting deliberate indifference to his serious medical needs. After discovery, the defendants moved for summary judgment, arguing that Mr. Reneau failed (1) to present evidence that Nurse Cardinas knew of the seriousness of his medical needs, and (2) to show that his claim against Dr. Cabiling was anything more than a disagreement about the type and course of medical treatment provided.

The magistrate judge recommended granting the defendants' motion as to Dr. Cabiling, stating that Mr. Reneau's arguments established nothing more than a disagreement with Dr. Cabiling's course of treatment. But he recommended denying the defendants' motion as to Nurse Cardinas because a reasonable factfinder could conclude that, having seen Mr. Reneau's injuries and heard his reports of pain, she chose to ignore a substantial risk of serious harm by refusing to examine him. Both sides objected to portions of the report and recommendation.

The district court adopted the recommendation as to Dr. Cabiling. It rejected the recommendation to allow the case against Nurse Cardinas to proceed, however,

4

holding that Mr. Reneau had failed to present evidence to show that Nurse Cardinas actually drew an inference of serious harm.

Mr. Reneau now appeals.

## DISCUSSION

### I.      Legal Standards

We review the district court's grant of summary judgment de novo. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We construe Mr. Reneau's pro se filings liberally, but we do not act as his lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

In *Estelle v. Gamble*, the Supreme Court held that prison officials' "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted).  An Eighth Amendment medical-needs inquiry has two prongs, one objective and one subjective.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Under the objective prong, the deprivation must be "sufficiently serious."  *Id.* (internal quotation marks omitted).  And under the subjective prong, the official must have a "sufficiently culpable state of mind."  *Id.* (internal quotation marks omitted).

For purposes of summary judgment, the defendants did not contest whether Mr. Reneau's injuries were sufficiently serious to satisfy the objective prong.  Thus,

5

we need examine only the subjective prong. In prison-conditions cases, the required "state of mind is one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted). In this context, a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

## II.     Claim Against Nurse Cardinas

Mr. Reneau's claim against Nurse Cardinas arises out of her failure to examine his injuries on March 8, 2017, thus delaying the necessary treatment (such as X-rays and casting of his leg) and causing him to suffer unnecessary pain. Mr. Reneau argues that the district court construed the facts in the light most favorable to Nurse Cardinas, rather than to Mr. Reneau, and that it erred in requiring him to present evidence that Nurse Cardinas drew an inference of substantial harm. He asserts that if she lacked knowledge of his medical needs, it was because she refused to examine him.

Nurse Cardinas had a dual role: she was not only a medical provider, but also the gatekeeper for more advanced medical providers, such as the prison doctor(s). "A prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (ellipsis and internal quotation marks

6

omitted)). "An inmate need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge of* a *substantial risk* of serious harm." *Id.* at 752 (internal quotation marks omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (internal quotation marks omitted). "This is so because if a risk is obvious so that a reasonable man would realize it, we might well infer that the defendant did in fact realize it." *Id.* (brackets and internal quotation marks omitted).

Viewed in the light most favorable to Mr. Reneau for purposes of summary judgment, the undisputed facts are that Mr. Reneau told Nurse Cardinas that he had fallen, showed her bruising and swelling on his leg and shoulder, told her he was in severe pain and could not lift his left arm or move his left foot, and told her that it felt like something in his shoulder was injured and something in his leg was broken. Nurse Cardinas then communicated to him that she would not examine all of his injuries during the visit and asked him to choose which injury she would examine.[3]

---

[3] Before the district court, the defendants asserted that Nurse Cardinas asked which injury she should examine "first." R. at 142, 146, 332, 335. But the defendants' motion for summary judgment relied solely on Mr. Reneau's testimony, and Mr. Reneau never testified that Nurse Cardinas asked which injury she should examine "first." Rather, he consistently asserted that she declined to examine all his injuries during the visit, and she directed him to choose which injury she would

When he became upset at being denied assessment of all his injuries and told her that he would file a § 1983 action against her if she did not examine all his injuries, she called security and had him removed from the medical clinic without examining any of his injuries. These facts, if believed by a factfinder, sufficiently establish the subjective prong of the Eighth Amendment.

A prisoner has a constitutional right to medical care for his serious medical needs. *See Estelle*, 429 U.S. at 103-04. It follows that if a prisoner suffers multiple serious injuries, he has a right to medical treatment for each such injury. The facts recited by Mr. Reneau, if believed, establish that at the outset of the March 8 visit, Nurse Cardinas refused or declined to examine all of Mr. Reneau's asserted injuries. Further, Nurse Cardinas sent him back to his cell without examining him and without providing so much as an aspirin, despite his complaints of severe pain and the evident bruising that he showed her. A reasonable factfinder could conclude that she failed to perform her duties to provide medical attention, to ascertain whether any of Mr. Reneau's injuries required more advanced medical care, and to refer him for such care. *See Burke v. Regalado*, 935 F.3d 960, 994-95 (10th Cir. 2019) (holding that evidence established an Eighth Amendment violation where nurse declined to examine inmate suffering paralysis who later died); *Mata*, 427 F.3d at 755-56, 758 (reversing summary judgment in favor of nurse who declined to provide any

---

examine. Before this court, the defendants have elected not to continue their district-court argument, but instead recognize that "the evidence is undisputed Ms. Cardinas informed Plaintiff she could only examine one injury." Aplee. Br. at 17.

8

treatment to inmate suffering severe chest pain); *Sealock*, 218 F.3d at 1210-11 (reversing summary judgment in favor of officer who failed to call for medical assistance when inmate suffered severe chest pains); *id.* at 1211-12 (reversing summary judgment in favor of a physician's assistant, where the evidence left open the possibility that he was informed of inmate's chest pain but failed to summon an ambulance); *see also Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014) (noting, in considering qualified immunity, that it is clearly established in this circuit that "a deliberate indifference claim will arise when a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, . . . and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell" (internal quotation marks omitted)).

Nurse Cardinas asserts that "although the evidence in the summary judgment record may demonstrate [she] was aware of facts to draw the inference that Plaintiff was injured, . . . there is no evidence in the summary judgment record to suggest [she] **actually drew** the inference a substantial risk of harm existed as to Plaintiff and then disregarded that risk." Aplee. Br. at 15-16. She notes that before she could conduct an examination, Mr. Reneau became upset and was escorted out. A reasonable factfinder, however, could conclude that before their disagreement, Mr. Reneau presented Nurse Cardinas with sufficient facts to establish that there was an obvious substantial risk to him of serious injury. When apprised of the underlying circumstances (a fall off a ladder), and the results (bruising, swelling, severe pain, an

9

inability to move appendages, and a feeling that something in the area was broken or torn), the possibility of a serious injury would be obvious even to a layperson. From the circumstantial evidence, a reasonable factfinder therefore could conclude that Nurse Cardinas actually drew the inference of a substantial risk of serious harm. *See Farmer*, 511 U.S. at 842; *Mata*, 427 F.3d at 752.[4]

Moreover, Nurse Cardinas cannot rely on her own failure to conduct an examination to conclusively establish that she did not in fact draw the inference that Mr. Reneau had suffered serious injuries. *See Mata*, 427 F.3d at 752 ("An official would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." (internal quotation marks omitted)). And viewing the evidence in Mr. Reneau's favor, he became upset because he perceived that Nurse Cardinas was refusing to examine all of his injuries. It is a reasonable inference that, had she assured him she would in fact examine all his injuries, the examination would have proceeded without further incident.

In *Mata*, we stated that "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either

---

[4] Of course, "the obviousness of a risk is not conclusive and [Nurse Cardinas] may show that the obvious escaped [her]." *Farmer*, 511 U.S. at 843 n.8; *see also id.* at 844 ("[I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so."). "[K]ey facts remain in dispute and nothing we say should be taken as suggesting liability must attach after they are sorted out at trial." *Blackmon v. Sutton*, 734 F.3d 1237, 1246 (10th Cir. 2013).

unnecessary pain or a worsening of [his] condition." *Id.* at 755. At a minimum, Mr. Reneau left the clinic on March 8 with a fractured fibula bone, and without any pain-relieving medication. It is a reasonable inference that he suffered pain from his broken bone until he received treatment several days later. Further, the prison did not take X-rays until March 15. As the magistrate judge noted, the record indicates that the prison takes X-rays once a week. It is a reasonable inference that had Nurse Cardinas examined Mr. Reneau on the morning of Wednesday, March 8, he would not have had to wait until Wednesday, March 15, for X-rays and until Friday, March 17, for a temporary cast.[5] It thus is a reasonable inference that Nurse Cardinas's failure to examine Mr. Reneau on March 8 caused an unnecessary delay in treating his fractured fibula.

For these reasons, we reverse the grant of summary judgment to Nurse Cardinas and remand for further proceedings.

## III. Claim Against Dr. Cabiling

The district court held that Mr. Reneau's disagreement with Dr. Cabiling's course of treatment failed to establish that the doctor was deliberately indifferent to Mr. Reneau's medical needs. Mr. Reneau argues that his claim is not merely a disagreement with Dr. Cabiling's medical judgment because (1) Dr. Cabiling "chose to pursue an easier less efficacious course of medical treatment," which "states a

---

[5] The defendants assert that "[a] temporary cast was put on Plaintiff's leg the same week as his fall." Aplee. Br. at 4. That is incorrect. The undisputed facts are that Mr. Reneau was injured on Wednesday, March 8, and the temporary cast was applied nine days later on Friday, March 17.

11

valid Eighth Amendment claim," Aplt. Opening Br. at 12; (2) Dr. Cabiling's response was not a reasonable treatment for a torn rotator cuff; and (3) Dr. Cabiling denied him access to an orthopedic specialist capable of evaluating the need for surgery.

It is well-established that "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation, absent evidence the prison official knew about and disregarded a substantial risk of harm to the prisoner's health or safety." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (brackets, citation, and internal quotation marks omitted). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata*, 427 F.3d at 751; *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). As particularly relevant here, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; *see also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (noting that types of medication prescribed and referrals to specialists are generally matters of medical judgment).

It is correct that "[i]f a prison doctor . . . responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard." *Self*, 439 F.3d at 1232. But this type of "claim is . . . actionable only in cases where the

12

need for additional treatment or referral to a medical specialist is obvious," such as when a medical professional (1) "recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral"; (2) "fails to treat a medical condition so obvious that even a layman would recognize the condition"; or (3) "completely denies care although presented with recognizable symptoms which potentially create a medical emergency." *Id.* The record does not establish that any of these situations occurred here.

The record contains no evidence that Dr. Cabiling was unable to treat Mr. Reneau's shoulder or that the injury to his shoulder was so obvious that even a layman would recognize a rotator cuff tear. Moreover, Dr. Cabiling provided some treatment, which gave Mr. Reneau some relief from pain for a matter of months. And the record contains no evidence to support Mr. Reneau's assertions that Dr. Cabiling's course of action was dictated solely by cost considerations or that his treatment was patently unreasonable in the circumstances. *See id.* at 1235 ("Summary judgment requires more than mere speculation. It requires some *evidence*, either direct or circumstantial, that [the practitioner] knew about and consciously disregarded the risk.").

For these reasons, we affirm the grant of summary judgment to Dr. Cabiling.

## CONCLUSION

Mr. Reneau's motion to proceed without prepayment of costs and fees is granted. The district court's grant of summary judgment to Nurse Cardinas is

13

reversed and remanded for further proceedings. The remainder of the judgment is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge

14