ORDER AND JUDGMENT*
BOBBY R. BALDOCK, Circuit Judge.
Plaintiff David Wayne Heidtke, a former inmate at the Huerfano County Correctional Center, fractured the distal radius of his right arm while playing softball with other inmates. For over seven weeks, Plaintiff experienced worsening pain and swelling. Eventually, a doctor at Denver Health Medical Center diagnosed Plaintiff with a malunion of the fracture and Complex Regional Pain Syndrome (CRPS), a chronic pain condition. Plaintiff sued the prison’s temporary treating physician, Dr. Jere Sutton, for deliberate indifference to his medical needs in violation of the Eighth Amendment.[1] The district court granted Defendant Sutton’s motion for summary judgment, concluding he did not consciously disregard Plaintiffs medical needs.[2] Plaintiff appealed. We review a grant of summary judgment de novo, using the same standard as the district court. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir.2000). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.
I.
On June 2, 2008, the same day Plaintiff fractured his arm, a doctor at a local emergency room examined Plaintiff and determined the fracture was not serious. The doctor placed Plaintiffs arm in a splint and ordered Plaintiff to keep his arm elevated and ice packed for the first few days. The doctor told Plaintiff the injury would take three to eight weeks to heal. The emergency room doctor’s discharge instructions stated Plaintiff should return to the emergency room if the splint did not prevent pain when he moved or if Plaintiff experienced unexpected, severe pain, numbness, discoloration, or swelling beyond the splint.
Two days later, on June 4, Plaintiff had a follow up visit with Defendant Sutton at the prison medical clinic. Defendant ordered Plaintiff to return in five days for possible casting of the arm. At the June 4 appointment, Plaintiff, who had an upper bunk bed, asked Defendant to order a lower bunk restriction so he would not have to climb into the upper bed without a ladder. On June 6, 7, and 10, Plaintiff went to the medical clinic, complaining of pain and swelling. On each of these occasions, Plaintiff did not wear his sling. The nurse on duty told him to wear his sling at each of these visits. Again, on June 13, Plaintiff returned to the clinic without wearing his sling. He requested to have his arm re-wrapped, and complained of continued pain and swelling. Plaintiff saw Defendant for the second time on June 16 *691 or 17. Defendant determined he could not cast the arm because of the continued swelling. Defendant ordered an x-ray of the arm and a follow up visit in two weeks. Defendant’s reading of the x-ray did not reveal a malunion of the fracture. Subsequent to this visit, Plaintiff filed grievances, complaining of the increasing pain and swelling.
The next month, on July 2, Plaintiff saw a nurse because of continuing pain. He complained not only of worsening pain and swelling, but also of the loss of almost all mobility in his thumb, increased tingling and numbing sensations in his fingers, and pain from his thumb to his elbow. The nurse rewrapped the bandage covering the splint. Plaintiff returned to the medical clinic on July 5. Another nurse documented Plaintiffs complaints of pain, rew-rapped his bandage, and gave him a prescription for acetaminophen. Plaintiff took the initial dose of medicine, but failed to obtain the remainder of the doses. Two days later, on July 7, Plaintiff saw Defendant for the third time. Defendant noted the swelling, but stated the hand and fingers had good color and warmth. Defendant rewrapped the bandage, ordered an additional x-ray, and prescribed Naprosyn for the pain. Defendant’s temporary, interim duty with the prison ended the following day. The new prison physician saw Plaintiff seven and a half weeks after the injury and referred Plaintiff to an orthopedic surgeon, who in turn referred Plaintiff to a neurologist. Doctors then diagnosed Plaintiff with carpal tunnel syndrome and CRPS.
In his complaint, Plaintiff alleged Defendant was deliberately indifferent to his medical needs because Defendant knew: (1) Plaintiff needed to return to the hospital based on the emergency room doctor’s discharge instructions; (2) Plaintiff needed to be assigned a lower bunk and did not order such a restriction; (3) leaving a broken arm splinted rather than casted posed a substantial risk of serious injury; and (4) Plaintiff should return to the hospital if he experienced pain and swelling, yet, rather than fulfill his gatekeeper role, he re-wrapped the splint. Additionally, Plaintiff alleged Defendant refused to fulfill his gatekeeper role and failed to provide oversight to the medical staff; specifically, he knew that the nurses did not schedule follow up appointments and that the nurses rewrapped Plaintiffs splint without following nursing protocols, filling out records, and without fulfilling their gatekeeper roles.
The district court granted Defendant’s motion for summary judgment. The district court analyzed his Eighth Amendment claim pursuant to the two-prong test the Supreme Court set forth in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This test requires the deprivation of care to be objectively sufficiently serious and the official to be subjectively aware of the risk. The district court held Plaintiffs radial fracture was sufficiently serious to meet the objective prong of the test. But as to the subjective prong, the court concluded nothing in the record supported an inference Defendant possessed the required culpable subjective mental state for deliberate indifference. The court noted Defendant and the nurses saw Plaintiff eight times over a one month period for .his complaints. The court looked to evidence that Defendant examined Plaintiff two days after the injury, 13 days later, and 28 days after that. The district court stated even though, arguably, Defendant could have been more thorough and comprehensive, the medical staff noted and addressed Plaintiffs complaints at each visit. The district court stated:
*692 Ail of plaintiffs various complaints about the care he received from Dr. Sutton— whether he fully appreciated the seriousness of plaintiffs fracture and the potential for the development of CRPS; whether the arm should have been cast-ed and who was qualified to make that determination; whether the swelling and other symptoms plaintiff experienced were consistent with his injury or suggested a more serious complication; the scheduling and timeliness of follow up appointments; the failure to order a lower bunk restriction — at best suggest nothing more than the erroneous exercise of medical judgment regarding the seriousness of plaintiffs condition. This is not a case where the necessity for a different or more aggressive course of medical treatment was so obvious that a lay person could have perceived it.
Heidtke v. Corrections Corp. of Am., 2011 WL 1335855, *5 (D.Colo. Apr.7, 2011). The district court concluded it could not second-guess Defendant’s medical judgment under the guise of an Eighth Amendment claim. The court further concluded no evidence suggested Defendant was deliberately indifferent in not ordering a referral. On appeal, Plaintiff contends disputed issues of material fact exist from which we could infer Defendant knew of a substantial risk of serious harm but failed to take reasonable measures to abate the risk.
II.
A district judge may properly grant a motion for summary judgment where “no genuine issue as to any material fact” exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). In an Eighth Amendment deliberate indifference case, “we look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party.” Self v. Crum, 439 F.3d 1227, 1230 (10th Cir.2006). Plaintiff must “go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party’s case in order to survive summary judgment.” Id. (quoting Sealock, 218 F.3d at 1209). If, after a review of the record, we determine no genuine issue of material fact was in dispute, “we determine whether the substantive law was applied correctly.” Sealock, 218 F.3d at 1209.
Prison officials “violate the Eighth Amendment’s ban on cruel and unusual punishment if their ‘deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.’ ” Self, 439 F.3d at 1230 (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To prevail on a § 1983 claim, “ ‘inadvertent failure to provide adequate medical care’ is not enough, nor does ‘a complaint that a physician has been negligent in diagnosing or treating a medical condition ... state a valid claim of medical mistreatment under the Eighth Amendment.’ ” Id. (quoting Estelle, 429 U.S. at 105, 97 S.Ct. 285). “Rather, ‘a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.’ ” Id. (quoting Estelle, 429 U.S. at 106, 97 S.Ct. 285). We conduct a two-pronged inquiry, composed of an objective and subjective component. Id. (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). “Under the objective inquiry, the alleged deprivation must be ‘sufficiently serious’ to constitute a deprivation of constitutional dimension.” Id. (citing Famer, 511 U.S. at 834, 114 S.Ct. 1970). Under the subjective inquiry, “the prison official must have a ‘sufficiently culpable state of mind.’ ” Id. *693 at 1231 (citing Farmer, 511 U.S. at 834, 114 S.Ct. 1970).
A.
As mentioned above, the district court concluded Plaintiffs “radial fracture was sufficiently serious to meet the objective prong of the test.” Heidtke, 2011 WL 1335855, *3. On appeal, Plaintiff contends the district court erred in identifying the injury as a radial fracture rather than complications from a radial fracture. For purposes of this appeal, we will assume, without deciding, Plaintiffs fracture and complications from the fracture are sufficiently serious to satisfy the objective inquiry. We turn then to the subjective inquiry. A prison official cannot be liable for a claim of deliberate indifference “unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” Self, 439 F.3d at 1231 (internal quotation marks omitted). “The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm.” Id. (internal quotation marks omitted). And “[wjhether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.” Id. (internal quotation marks omitted). A serious medical need’s obviousness “could be evidence of deliberate indifference, although a prison official may show that the obvious escaped him and avoid liability.” Id. (internal quotation marks omitted).
In this Circuit, we have recognized two types of conduct which may rise to the level of deliberate indifference in a prison medical case: “(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating an inmate’s condition.” Id. But, our case law firmly establishes that “the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment.” Id,, at 1232. Examples of such matters “that traditionally fall within the scope of medical judgment are decisions as whether to consult a specialist or undertake additional medical testing.” Id. (emphasis added). A prison doctor does not violate the Eighth Amendment’s prohibition on cruel and unusual punishment when he “simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated.” Id. (quoting Estelle, 429 U.S. at 107, 97 S.Ct. 285) (internal quotation marks omitted). An Eighth Amendment deliberate indifference claim “is therefore actionable only in cases where the need, for additional treatment or referred to a medical specialist is obvious.” Id. (emphasis added). “And obviousness in the circumstances of a missed diagnosis or delayed referral, while not subject to a precise formulation, requires direct or circumstantial evidence that can arise in several different contexts.” Id. We have identified three. First, a doctor may recognize an inability to treat a patient because of the seriousness of the medical condition and a lack of expertise, but decline or unnecessarily delay a referral. Id. Second, a doctor may fail to treat a medical condition “so obvious that even a -layman would recognize the condition.” Id. Finally, a doctor could completely deny care even though he observes recognizable symptoms which could signal a medical emergency. Id.
*694 If a prison physician “responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard.” Id. “But where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient’s condition, an inference of deliberate indifference is unwarranted under our case law.” Id. at 1232-33 (emphasis added). Accordingly, in this Circuit, the “negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.” Id. at 1233 (internal quotation marks omitted). As long as the prison physician “provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met.” Id. Indeed, we have limited our subjective inquiry “to consideration of the doctor’s knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary.” Id. (emphasis added).
B.
Plaintiff has not meet the subjective prong. In the present case, Plaintiff, like the prisoner in Self, attempts to remove the subjective inquiry from the deliberate indifference test by suggesting “that a competent doctor looking at [his] symptoms would have known that [malunion and CRPS, in our case, were] possible and taken additional steps to confirm such a diagnosis.”[3] Id. As we discussed in Self, “Farmer v. Brennan and our cases interpreting Farmer have made clear, ‘a purely objective test for deliberate indifference is simply incompatible’ with the tenets of the Eighth Amendment.” Id. (quoting Farmer, 511 U.S. at 839, 114 S.Ct. 1970). Thus, Plaintiff “must point to some evidence allowing an inference [Defendant Sutton] consciously disregarded the possibility of [complications from the distal radius fracture].” Id.
Plaintiff posits five such inferences. Defendant knew of the hospital discharge instructions in his prison medical chart directing Plaintiff to return to the hospital if severe pain or swelling beyond the splint occurred. Defendant observed and documented Plaintiffs worsening symptoms and Defendant failed to refer Plaintiff to a specialist. Additionally, Defendant knew the obviousness of the need for treatment because the new prison physician noted “obvious” deformity and pain two weeks later and Defendant took measures to rew-rap the bandage and prescribe pain medications as Plaintiffs symptoms progressively worsened.
Taking the facts of the case in the light most favorable to Plaintiff, the facts do not show conscious disregard of Plaintiffs medical needs.[4] As discussed above, an *695 Eighth Amendment deliberate indifference claim is actionable only where the need for a referral or additional treatment is obvious. Self, 439 F.3d at 1232. And obviousness in the circumstances of a missed diagnosis or delayed referral arises in three contexts. Id. Obviousness first may be found where a medical professional completely denies care. But that certainly is not the case here, where Defendant Sutton examined Plaintiff on three occasions, ordered x-rays, prescribed medication, and monitored Plaintiffs condition. Rather, Plaintiff contends Defendant missed the diagnosis of malunion and CRPS and did not refer him to a specialist.
1.
We accordingly turn to the second scenario from which we may find obviousness. This occurs where a medical professional fails to treat a medical condition “so obvious that even a layman would recognize the condition.” Self, 439 F.3d at 1232. Plaintiff believes the district court erred in applying this standard. The Farmer court stated the risk is obvious if a “reasonable man” would realize it. Farmer, 511 U.S. at 842, 114 S.Ct. 1970. Plaintiff argues under our precedent, a physician, rather than a lay person with no medical training should serve as our measure of a reasonable man. Plaintiff cites Department of Labor v. Occupational Safety and Health Review Commission, 938 F.2d 1116 (10th Cir.1991), in support of his position. But that case is not an Eighth Amendment deliberate indifference case. Rather, Plaintiff ignores our decision in Self, in which we clearly stated that obviousness arises where the condition is so obvious even a layman would recognize the condition. Self, 439 F.3d at 1232. Indeed, this situation arose in Oxendine v. Kaplan, 241 F.3d 1272, 1279 (10th Cir.2001), where a prison doctor treated a severed finger, but missed diagnosing the onset of gangrene. Id. The facts in that case easily satisfied the subjective component for the purposes of defeating summary judgment. Like in our case, the inmate informed the physician his finger was not healing. Id. And although the doctor recognized and noted the inmate’s repaired tissue appeared black and was disintegrating, he ignored the symptoms. Id.
But unlike the medical condition in Ox-endine, the malunion and onset of CRPS in this case were not so obvious that even a layman would recognize the conditions. A misdiagnosis, even if malpractice, is insufficient to satisfy the subjective component. But Plaintiff does not view Defendant’s missed diagnosis of CRPS as a misdiagnosis. As stated by Jonathan Woodcock, one of Plaintiffs experts, “[t]his case is rather typical in that the problem was not one of misdiagnosis. The problem was a failure to recognize that Mr. Heidkte’s [sic] early signs and symptoms put him at high risk for the development of CRPS, and that early in-terventional treatment which could have *696 impacted his course was not undertaken.” Aplt.App. vol. II, 443. Accordingly, this situation is more akin to a treating physician’s “failure to connect-the-dots,” which, by itself, “is insufficient to establish a culpable state of mind.” Self, 439 F.3d at 1235. “Only when the symptoms obviously point to a substantial risk of harm can we draw an inference of the medical professional’s conscious disregard of an inmate’s medical emergency.” Id. As Plaintiffs expert admits, Defendant failed to recognize the early signs and symptoms which put him at risk for CRPS.
Defendant’s failure to recognize the early signs and symptoms highlights the flaw in Plaintiffs argument — Defendant lacked knowledge of the complications from the fracture. Plaintiff argues the Supreme Court’s standard for the subjective prong is whether a physician “abates the risk” of a medical condition and the district court erred by not explaining how Defendant’s actions “were reasonable measures to abate the risk of complications of a fracture.” In making this argument, Plaintiff gets ahead of himself. Before a physician can abate a risk, he must know of that risk.[5] And as our precedent makes clear, for a physician to know of a risk, that risk must be obvious to a layman. The presence of swelling and pain, even weeks after fracturing an arm, would not trigger a layperson’s suspicion that more serious complications may potentially develop. Defendant noted in Plaintiffs chart that, despite the pain and swelling, Plaintiffs fingers and hand had good color and warmth. Aplt.App. vol. I, 169. Moreover, Defendant ordered x-rays, scheduled follow up appointments with Plaintiff, and prescribed Plaintiff medication.[6] Dr. Woodcock stated “[t]he standard of care is to treat the symptoms which may develop into CRPS as early as possible in order to obtain a better outcome.” Aplt.App. vol. II, 443. The question of whether Defendant Sutton should have been aware CRPS could develop relates to the standard of care Defendant owed Plaintiff. Perhaps Defendant’s conduct constituted malpractice. But Plaintiff has a separate state law action against Defendant for that cause of action. As in the past, we refuse to consti-tutionalize a medical malpractice claim. See Estelle, 429 U.S. at 106, 97 S.Ct. 285 (“Medical malpractice does not become a constitutional violation merely because the *697 victim is a prisoner”)- Plaintiff cannot show that complications from the radial fracture were obvious to a layman. As mentioned above, the subjective prong of the deliberate indifference prong is exactly that — subjective. Plaintiff must show a conscious disregard on the part of Defendant, which Plaintiff simply cannot do.
2.
We turn now to the third and final scenario in which we may find obviousness. No evidence exists in the record to show Defendant may have recognized an inability to treat Plaintiff because of the seriousness of the medical condition and a lack of expertise, but declined or unnecessarily delayed a referral to an orthopedic surgeon. Self, 439 F.3d at 1232. “[A]bsent an extraordinary degree of neglect,” where a doctor exercises his considered medical judgment not to consult a specialist, the plaintiff cannot satisfy the subjective component.[7] Id. Dr. Woodcock stated Defendant “ignored [Plaintiffs] worsening symptoms, making no effort to diagnose or refer him for further specialty evaluation for over seven weeks.” Aplt.App. vol. II, 448. Dr. Woodcock believes Defendant “should have been more concerned about preventing CRPS than in waiting to confirm its diagnosis.” Id. at 446. This evidence does not establish Plaintiffs symptoms “obviously required unusual medical skill or ability thus necessitating referral, or that [Defendant Sutton] otherwise failed to provide a course of treatment consistent with the symptoms he recognized.” Self, 439 F.3d at 1235. Rather, Defendant “provide[d] a level of care consistent with the symptoms presented by the inmate.” Id. at 1233.. Because no evidence of actual knowledge or recklessness exists, “the requisite state of mind cannot be met.” Id.
3.
Finally, Plaintiff asserts Defendant was deliberately indifferent to his medical needs by failing in his “gatekeeper” role. But this type of deliberate indifference is rare. Sealock, 218 F.3d at 1211. Where the physician “knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, ... he may be liable for deliberate indifference.” Id. (emphasis added). Here, Defendant Sutton was Plaintiffs treating physician. Although Defendant stated he would need a neurologist to rule out CRPS, a general practitioner is not deliberately indifferent by failing to make a referral when he has no knowledge of a substantial risk.[8] Such a result, absent an extraordinary degree of neglect] would be inconsistent with our case law that a doctor’s decision to consult a specialist is a medical judgment, which does not satisfy the subjective component. Self 439 F.3d at 1232.
In this case, a reasonable jury could- not infer conscious disregard either from Defendant’s missed diagnosis or Defendant’s failure to refer Plaintiff to a specialist. Although Defendant’s medical judgment may have constituted malpractice or negli *698 gence, we would simply speculate to conclude Defendant had a culpable state of mind. Because summary judgment requires evidence rather than speculation that Defendant knew about and consciously disregarded the risk, the decision of the district court is AFFIRMED.[9]

 This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. The district court declined to exercise its supplemental jurisdiction over Plaintiff's state law claims. Plaintiff subsequently filed a state court action to address those claims.

. Plaintiff sued Corrections Corporation of America, which owns and operates Huerfano County Correctional Center. Plaintiff additionally sued Kathryn Carpenter and Anna Jolly, nurses at the prison. Plaintiff has voluntarily dismissed every Defendant except for Defendant Sutton.

. Despite Plaintiff’s concerns that the district court erred in its subjective component analysis because it identified the fracture itself as the injury for the objective inquiry, the district court clearly did analyze the complications that resulted from the treatment of the fracture in its subjective prong analysis. The district court did not examine the Eighth Amendment claim as if Defendant had somehow caused the fracture. Indeed, the district court analyzed Defendant’s treatment of the fracture, acknowledging the issues of whether Defendant fully appreciated the seriousness of Plaintiff's fracture and the potential for the development of CRPS; whether the arm should have been casted and who was qualified to make that determination; whether the swelling and other symptoms plaintiff experienced were consistent with his injury or suggested a more serious complication; and the failure to order a lower bunk restriction. Heidtke, 2011 WL 1335855 at *5.

. Plaintiff argues the district court acknowledged disputed issues of material fact existed and summaiy judgment was therefore improper. Although Plaintiff is correct the dis *695 trict court acknowledged genuine issues of fact exist, as do we — whether Defendant fully appreciated the seriousness of the fracture and the potential for development of CRPS, whether the arm should have been casted, whether Plaintiff’s swelling and pain were consistent with his injury or suggested a more serious complication, the scheduling and timeliness of appoints, and the failure to order a lower bunk restriction — Plaintiff confuses the summary judgment standard. The district court viewed, each of these facts in Plaintiff’s favor, as do we, and concluded the facts suggested nothing more than the erroneous exercise of medical judgment regarding the seriousness of Plaintiff's condition. In other words, we give Plaintiff the benefit of the doubt these facts are true and consider them in his favor. But still, Plaintiff cannot succeed in showing a conscious disregard to satisfy the subjective prong.

. Plaintiff asserts the district court "has set up an impossible catch 22 where a prisoner must be ‘seen’ to establish knowledge of a risk, but the very act of being seen defeats the prisoner's claim.” Plaintiff is incorrect. The key is not the number of times a doctor sees a patient, but instead whether the doctor examines the patient and treats his symptoms. In arguing Defendant's treatment methods failed to abate a substantial risk, Plaintiff disregards whether Defendant even had knowledge of a substantial risk. Instead, Plaintiff argues the second prong should be simply another objective prong, based on what a competent physician should know, instead of what the doctor at issue actually knew when treating the patient. In other words, Plaintiff must show more than that a risk merely existed. Rather, Plaintiff must show Defendant consciously disregarded Plaintiff’s condition, amounting to deliberate indifference.

. Defendant viewed the x-ray of Plaintiff’s wrist and noted, on June 17, 2008, that the wrist appeared stable and slightly impacted with no angulation. Aplt.App. vol. I, 241. According to Defendant’s reading of the x-ray, the malunion had not occurred as of that visit. Plaintiff’s expert, W. Carlton Reckling, stated he did not believe the x-rays taken on June 17, 2008 demonstrate "an acceptably aligned fracture.” Id. at vol. II, 344. Even if Defendant misread the x-ray, at worst, Defendant committed malpractice. Defendant treated Plaintiff and was not deliberately indifferent, though he may have been negligent. Defendant next saw Plaintiff on July 7, when he ordered another x-ray. Id. at vol. I, 244. Defendant ended his employment with the prison the following day.

. Plaintiff argues this language is dicta, but we disagree. Self restated the law of Eighth Amendment deliberate indifference in the Tenth Circuit. We may not disregard our case law in which we have interpreted the subjective prong of the Farmer test. Furthermore, Plaintiff’s contention that Self is inconsistent with Farmer is simply untrue. The district court correctly applied this Circuit's case law in its decision and did not establish a standard inconsistent with that of Fanner.

. Defendant acted in the capacity of a general practitioner at the prison. Although he had been an orthopedic surgeon in the past, he stopped practicing as an orthopedic surgeon in 1988.

. On March 20, 2012, Plaintiff filed a "motion to strike factually false, ex-parte letter and for reprimand.” On March 21, 2012, Plaintiff filed an "unopposed motion to withdraw motion to strike factually false, ex-parte letter and for reprimand.” Plaintiff's March 21 unopposed motion to withdraw is granted.