**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 7, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ARCHIE RACHEL,

    Plaintiff - Appellant,

v.

JEFFREY TROUTT, D.O., in his official
and individual capacities; TAMI
GROGAN, Health Services Administrator,
in her official and individual capacities;
JANET DOWLING, Warden of JCCC, in
her official and individual capacities;
GENESE McCOY, Administrative Review
Authority, in her official and individual
capacities; CARL PETTIGREW, President
of the Oklahoma Board of Osteopathic
Examiners, in his official and individual
capacities,

    Defendants - Appellees.

No. 18-6053
(D.C. No. 5:15-CV-00141-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Archie Rachel, an Oklahoma prisoner proceeding pro so, appeals the district court's grant of summary judgment in favor of defendants in his action under 42 U.S.C. § 1983 alleging claims of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Exercising jurisdiction under 28 U.S.C. § 1921, we affirm.

## I.      Background

Rachel's claims alleged inadequate medical care while he was housed at the James Crabtree Correctional Center (JCCC), where Janet Dowling is the Warden, Tami Grogan is the Health Services Administrator (HSA), and Jeffrey Troutt is a physician. Genese McCoy is the Medical Services Administrator for the Oklahoma Department of Corrections (ODOC).[1] The district court granted summary judgment on most of Rachel's claims due to his failure to exhaust his administrative remedies. The court held that Rachel had exhausted two claims against Grogan, but that he failed to come forward with evidence that she was deliberately indifferent to his serious medical needs.

## II.     Discussion

We review a district court's grant of summary judgment de novo. *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

---

[1] Rachel raises no claim of error in the district court's separate dismissal of all his claims against defendant Carl Pettigrew. Nor does he challenge the court's dismissal of his official capacity claims against all defendants.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). But to avoid summary judgment, a plaintiff must come forward with evidence and cannot rely on "mere speculation, conjecture, or surmise." *Id.* (internal quotation marks omitted). We liberally construe a pro se appellant's briefs. *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998).

## A.  Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires "proper exhaustion of administrative remedies," *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "[P]roper exhaustion . . . means using all steps that the agency holds out, and doing so *properly*." *Id.* at 90 (internal quotation marks omitted). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation and internal quotation marks omitted).

ODOC's grievance process begins with a Request to Staff (RTS). If an inmate doesn't resolve an issue through an RTS, the inmate must submit an Offender Grievance Form. As relevant here, medical grievances are submitted to Grogan, the HSA at JCCC. The final step of the grievance process is an appeal to the appropriate Administrative Review Authority (ARA). If a grievance involves a medical issue, it must be appealed to McCoy, ODOC's Health Services ARA. The grievance process

3

also includes a special provision allowing inmates to submit grievances of an emergency nature. "If alleged to be of an emergency or sensitive nature, the grievance will be screened to determine if it should be handled as an emergency or sensitive grievance . . . ." R., Vol. I at 112-13.

Failure to exhaust is an affirmative defense. *Jones*, 549 U.S. at 216. Defendants raised Rachel's failure to exhaust in the district court in their summary judgment motion. The court held that Rachel failed to exhaust all but two of his claims.

### 1.    Emergency Grievances

Rachel contends that he exhausted all his claims by submitting two grievances labeled as emergency grievances to Grogan, JCCC 14-193 and JCCC 14-221. Rachel complained of stomach and chest pain and sought immediate medical care. He asserted that his situation was an emergency and he couldn't wait for a reply to an RTS. Grogan returned each of these grievances unanswered, noting, "Complaint is not of a sensitive and/or emergency nature as described in [the grievance policy]; consequently, the standard grievance process outlined in [the policy] must be followed." R., Vol. I at 126, 141. Rachel appealed to McCoy, who returned both appeals unanswered. McCoy told Rachel it was his "responsibility to submit [his] grievance correspondence properly." *Id.* at 129, 144. And she advised him to submit a Request for Health Services via the sick call process at JCCC. Rachel didn't re-submit either grievance through the standard, non-emergency grievance process.

4

The district court held that Rachel failed to exhaust any claim via his first emergency grievance, JCCC 14-193, because he didn't complete the grievance process. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (holding an inmate who starts the grievance process but doesn't complete it hasn't properly exhausted his administrative remedies). The same reasoning applies to Rachel's second emergency grievance, JCCC 14-221.[2]

Rachel argues that his emergency grievances were sufficient to exhaust his administrative remedies because he believed that his situation was an emergency and he therefore met the requirements for filing emergency grievances. But Grogan determined, pursuant to the ODOC grievance policy, that JCCC 14-193 and JCCC 14-221 didn't qualify as emergencies. And the policy gives Grogan, JCCC's HSA, the authority to determine whether a grievance labeled as an "emergency" by an inmate is, in fact, an emergency. R., Vol. I at 104 (designating the HSA as the Reviewing Authority), 117 (authorizing the Reviewing Authority to determine if a grievance is an emergency). Rachel can't rely on his own interpretation of the grievance process as permitting him, rather than ODOC, to decide what qualifies as an emergency grievance. *See Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010) ("Plaintiff's disagreement with prison officials as to the appropriateness of a

---

[2] Although the district court didn't reach the same holding as to JCCC 14-221, defendants argued it was procedurally defective in their summary judgment brief and they repeat that contention on appeal. *See Schanzenbach v. Town of Opal*, 706 F.3d 1269, 1272 (10th Cir. 2013) ("We can affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." (internal quotation marks omitted)).

particular procedure under the circumstances, or his belief that he should not have to correct a procedural deficiency does not excuse his obligation to comply with the available process." (internal quotation marks omitted)).

Rachel's argument that the defendants nonetheless received adequate notice of his claims through his improper emergency grievances also lacks merit. *See Jernigan*, 304 F.3d at 1032 (rejecting inmate's contention that he exhausted his claims because he gave notice to defendants by means other than the grievance process).

After determining that Rachel's grievances didn't qualify as emergencies, Grogan directed him to use the standard grievance process. He failed to do so. Thus, his two emergency grievances, JCCC 14-193 and JCCC 14-221, weren't sufficient to exhaust his administrative remedies as to any claim against any defendant.

## 2. Standard Grievance

Rachel contends that he exhausted claims by submitting grievance JCCC 14-218 through the standard grievance process. He began the process by submitting an RTS to Dowling, the JCCC Warden, referencing Grogan's determination that JCCC 14-193 didn't qualify as an emergency. Rachel asked Dowling what qualified Grogan to be the HSA, and he requested that Dowling get him qualified medical help. Dowling responded that Grogan met the qualifications for her position. She also advised Rachel to complete a Request for Health Services, rather than an emergency grievance, if he needed medical care. In response, Rachel submitted a grievance to Dowling asking, again, what qualified Grogan to be the

6

HSA. Dowling denied the grievance, repeating her response to the RTS. Rachel appealed to McCoy, who returned his appeal unanswered, identifying a procedural defect[3] and advising Rachel to submit a Request for Health Services to obtain medical care.

The district court held that JCCC 14-218 didn't exhaust Rachel's claim that Dowling demonstrated deliberate indifference toward his extreme pain and a serious risk of harm by denying JCCC 14-218. We agree. "[A properly completed] grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008). JCCC 14-218 didn't concern Dowling's handling of that same grievance and therefore didn't place Dowling on notice of Rachel's allegation.

For the same reason, Rachel also failed to exhaust, via JCCC 14-218: (1) his claims against McCoy that she demonstrated deliberate indifference to his serious medical needs by wrongfully rejecting his appeals in all three of his grievances; (2) his claims against Grogan that she answered Requests to Staff that were directed to Troutt and ignored prisoners' complaints about Troutt; and (3) his claims against Troutt that he refused to provide certain medications, look at sores on Rachel's body,

---

[3] Defendants contend on appeal that JCCC 14-218 was procedurally defective, but they didn't sufficiently raise this issue in their summary judgment brief. We therefore decline to affirm summary judgment on this alternative basis.

refer Rachel to a specialist, put Rachel on a special diet, and reply to Requests to Staff. JCCC 14-218 didn't concern any of these issues and therefore didn't provide sufficient notice of these particular claims against McCoy, Grogan, and Troutt to permit prison authorities to investigate and address them.

### B. Exhausted Claims Against Grogan

The district court held that Rachel exhausted, via JCCC 14-218, two claims against Grogan: (1) that she is unqualified to be the HSA, and (2) that she shouldn't have returned his first emergency grievance unanswered. But the court held Rachel failed to demonstrate a genuine issue of material fact that Grogan was deliberately indifferent to his serious medical needs.

To succeed on an Eighth Amendment claim, a prisoner must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Self*, 439 F.3d at 1230 (internal quotation marks omitted). The court's inquiry is comprised of objective and subjective components. *Id.* "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Id.* (internal quotation marks omitted). "[U]nder the subjective inquiry, the prison official must have a sufficiently culpable state of mind." *Id.* at 1230-31 (internal quotation marks omitted). This is "akin to recklessness": "consciously disregard[ing] a substantial risk of serious harm." *Id.* at 1231 (internal quotation marks omitted). Importantly, negligent diagnosis or treatment isn't enough to demonstrate a constitutional violation. *Id.* at 1230. Thus,

8

"the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Id.* at 1232.

The district court held that Rachel's first claim against Grogan failed because he presented no evidence regarding her alleged lack of qualifications. We affirm summary judgment on that claim because Rachel fails to address the district court's ruling in his appeal briefs. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). The district court held that Rachel's second claim against Grogan failed because there is no genuine dispute that he received medical care for the health issues he raised in his first emergency grievance. The court reasoned that, "[c]onsidering [Grogan's] evidence that medical staff treated [Rachel's] issues, [he] cannot show that Grogan was deliberately indifferent to a serious medical need for merely instructing [him] to utilize the non-emergency grievance process." R., Vol. I at 535-36.

Rachel acknowledges that he received medical care, but he contends it wasn't adequate. As the district court held, however, a disagreement with a provider's medical judgment regarding appropriate treatment is insufficient to demonstrate deliberate indifference. *See Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation."). Rachel asserts that the inadequacy of the treatment he received was obvious to his medical providers, but he fails to develop that argument or point to any evidence supporting it. *See Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1173 (10th Cir. 2013) ("While we liberally

9

construe [an appellant's] pro se filings, we will not assume the role of advocate and make his arguments for him." (internal quotation marks omitted)). We therefore affirm the district court's grant of summary judgment on Rachel's deliberate-indifference claim against Grogan based upon her rejection of his first emergency grievance.

## III.   Conclusion

We affirm the district court's judgment.

Rachel's request to proceed on appeal without prepayment of filing and docketing fees is granted. The relevant statute, 28 U.S.C. § 1915(a)(1), doesn't permit litigants to avoid payment of filing and docketing fees, only *prepayment* of those fees. Since we have reached the merits of this matter, prepayment of fees is no longer an issue, but Rachel remains obligated to pay all filing and docketing fees by continuing to make partial payments until the entire appellate filing fee is paid.

Entered for the Court


Nancy L. Moritz
Circuit Judge